IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

STATE OF WASHINGTON,                )    No. 72637-4-I
                                    )
                 Respondent,        )
                                    )
          v.                        )    PUBLISHED OPINION
                                    )
TOMMIE BERNARD LEWIS,               )
                                    )
                 Appellant.         )    FILED:  June 27, 2016
_____)

2016 JUN 27 AM 8:52

COURT OF APPEALS DIV I
STATE OF WASHINGTON
FILED

SCHINDLER, J. — Tommie Bernard Lewis claims the mandatory deoxyribonucleic acid (DNA) fee statute violates equal protection. Lewis asserts there is no rational basis to require a repeat felony offender to pay the mandatory DNA fee. Lewis also claims the court abused its discretion in ordering him to submit another DNA sample. We hold the DNA fee statute that requires imposition of a fee for every felony sentence is rationally related to the legitimate legislative objective to fund the creation and ongoing operation and maintenance of the DNA database. We also conclude the court did not abuse its discretion by requiring Lewis to submit a DNA sample, and affirm the judgment and sentence.

FACTS

Tommie Bernard Lewis and Wendy Hynd were involved in a romantic relationship and have a child together. On April 4, 2014, Swedish Hospital Emergency

Room medical personnel called 911 to report the domestic violence assault of Hynd. The 911 report states:

> COMMON CHILD FATHER PUNCHED COMPL [HYND] IN HEAD AND STRANGLED HER, NO WEAPONS. UNK[NOWN] WHERE SUSP[ECT] IS NOW. COMP HAS BEEN TREATED AT EVERETT HOSP.

Seattle Police Department Officer Morgan Irwin responded to the 911 call and contacted Hynd. Hynd told Officer Irwin that Lewis hit her "multiple times in the face and the back of the head with his fists . . . until she 'passed out'." Hynd said Lewis then "came back [and] used his hands to strangle [her] until she 'passed out' again." Officer Irwin took photographs of the "visible bruising and swelling to [her] face and neck."

On April 9, Seattle Police Department Detective Daljit Gill called Hynd to obtain her consent to obtain medical records and take a written statement. Detective Gill asked Hynd if "what she had told Officer Irwin about the strangling and getting punched in the head was the truth." Hynd said yes. However, Hynd refused to sign a medial release form, give a written statement, or testify at trial. " 'I didn't [die] and I just want this all to go away so I can move on with my life and forget about what happened. I don't want to go to court and I don't want to give a statement'."

Approximately three and a half hours later, Hynd called Detective Gill "sobbing." During the recorded call, Hynd said that when Detective Gill "called her earlier," Lewis was present and "look[ed] at her like he was going to hit her again." Hynd told Detective Gill that she " 'said all that so [Lewis] wouldn't hit me.' "

On April 10, the State charged Lewis with assault in the second degree domestic violence and tampering with a witness. The State alleged that on April 4, 2014, Lewis assaulted Hynd by strangulation and attempted to induce her "to withhold any

2

testimony" and to "absent . . . herself" from the criminal investigation or any official proceeding.

Lewis pleaded not guilty at arraignment. The court entered a domestic violence no-contact order. On July 16, the State filed an amended information to add two counts of domestic violence misdemeanor violation of the no-contact order.

Lewis waived his right to a jury trial. The State called a number of witnesses at trial. Hynd did not testify. The court admitted into evidence a number of recorded telephone calls Lewis made from the jail.

The court found Lewis not guilty of assault in the second degree because the State did not prove strangulation beyond a reasonable doubt.

> In her report of what had brought her to the hospital, Ms. Hynd said that besides being punched, she had also been choked. The charge in this case of assault in the second degree is premised upon an allegation that she was assaulted by strangulation. The medical evidence, however, standing alone, is insufficient to establish the essential element that her neck was compressed with the result that her blood flow or breathing were obstructed or that it was compressed with such an intent.

The court found Lewis guilty beyond a reasonable doubt of witness tampering and two counts of misdemeanor violation of a court order. The court found Lewis "repeatedly demonstrated a very strong concern" about whether Hynd "was cooperating with the authorities and whether she intended to appear when the case came on for trial." The court pointed to the evidence that Lewis told his father, "If you talk to her, tell her the best thing is just don't pop up." The court found the recorded jail calls showed Lewis "made direct contact with Ms. Hynd" and "was knowingly and willfully violating the terms of the April 22 court order."

3

With an offender score of 5, the court imposed a 17-month sentence. "Appendix B" to the judgment and sentence lists prior felony convictions of violation of the Uniform Controlled Substances Act, chapter 69.50 RCW, in 1995, 2000, and 2004.

The court ordered Lewis to provide a biological sample for DNA identification analysis and DNA testing. The court ordered Lewis to pay the mandatory victim penalty assessment of $500 and the mandatory DNA fee of $100. Lewis did not object. The court waived imposition of all discretionary fees, costs, and interest on the mandatory obligation of $600.

## ANALYSIS

For the first time on appeal, Lewis claims that as applied to an indigent defendant, imposition of the mandatory DNA fee under RCW 43.43.7541 violates substantive due process. Lewis also claims that as applied to a repeat felony offender, the DNA fee statute violates equal protection.[1] The State contends the substantive due process and equal protection constitutional challenges to the DNA fee statute are not ripe for review or manifest constitutional error under RAP 2.5(a)(3).

In State v. Shelton, 72848-2-I, slip op. at 1 (Wash. Ct. App. June 20, 2016), we considered the same as-applied substantive due process challenge to the DNA fee statute. We held that until the State attempts to enforce collection of the DNA fee or impose sanctions for failure to pay, the claim is not ripe for judicial review and is not an error of constitutional magnitude subject to review under RAP 2.5(a)(3). Shelton, slip op. at 11-12.

---

[1] The legislature amended the DNA fee statute, RCW 43.43.7541, in 2015 to add the language, "This fee shall not be imposed on juvenile offenders if the state has previously collected the juvenile offender's DNA as a result of a prior conviction." Laws of 2015, ch. 265, § 31. Because the remainder of the statute did not change and the amendment does not affect our analysis, unless otherwise noted, we refer to the current version of RCW 43.43.7541 throughout the opinion.

4

We adhere to our decision in Shelton as to Lewis's as-applied substantive due process challenge to the DNA fee statute. But we reach a different conclusion on his equal protection challenge to the statute. Because the equal protection challenge to the DNA fee statute is ripe for review and meets the requirements of RAP 2.5(a)(3), we reach the merits of that claim. State v. Cates, 183 Wn.2d 531, 538-39, 354 P.3d 832 (2015); State v. Lamar, 180 Wn.2d 576, 582-83, 327 P.3d 46 (2014).[2]

The Fourteenth Amendment to the United States Constitution and article I, section 12 of the Washington Constitution guarantee that "persons similarly situated with respect to the legitimate purpose of the law must receive like treatment." State v. Manussier, 129 Wn.2d 652, 672, 921 P.2d 473 (1996); State v. Coria, 120 Wn.2d 156, 169, 839 P.2d 890 (1992); State v. Schaaf, 109 Wn.2d 1, 17, 743 P.2d 240 (1987). Our Supreme Court has held the right to equal protection guaranteed under the Fourteenth Amendment and by the privileges and immunities clause of the Washington Constitution are "substantially identical and considered by this court as one issue." State v. Smith, 117 Wn.2d 263, 281, 814 P.2d 652 (1991).

In analyzing an equal protection claim, we "must first determine the standard of review against which to test the challenged legislation." Seeley v. State, 132 Wn.2d 776, 791, 940 P.2d 604 (1997). Lewis correctly concedes the rational relationship test applies to his challenge to the mandatory DNA fee statute.

Under the rational basis test, the challenged law must rationally relate to a legitimate state interest. State v. Shawn P., 122 Wn.2d 553, 561, 859 P.2d 1220

---

[2] We reject the State's argument that Lewis does not have standing. A criminal defendant "always has standing to challenge his or her sentence on grounds of illegality." State v. Bahl, 164 Wn.2d 739, 750, 193 P.3d 678 (2008).

(1993). The rational basis test is "highly deferential to the legislature." In re Det. of Thorell, 149 Wn.2d 724, 749, 72 P.3d 708 (2003). The rational basis test requires only that the means employed by the statute be rationally related to legitimate state goals, and not that the means be the best way of achieving that goal. Shawn P., 122 Wn.2d at 563. We "assume the existence of any necessary state of facts [we] can reasonably conceive in determining whether a rational relationship exists between the challenged law and a legitimate state interest." Amunrud v. Bd. of Appeals, 158 Wn.2d 208, 222, 143 P.3d 571 (2006).

A statute is presumed constitutional. Shawn P., 122 Wn.2d at 561. The party challenging the statute must show the legislative classification is "purely arbitrary." Thorell, 149 Wn.2d at 749. We will uphold the legislation unless the classification " 'rests on grounds wholly irrelevant to the achievement of a legitimate state objective.' " State v. Heiskell, 129 Wn.2d 113, 123-24, 916 P.2d 366 (1996)[3] (quoting Westerman v. Cary, 125 Wn.2d 277, 294-95, 892 P.2d 1067 (1994)); Seeley, 132 Wn.2d at 795. The party challenging the legislation " 'must show, beyond a reasonable doubt, that no state of facts exists or can be conceived sufficient to justify the challenged classification.' " Seeley, 132 Wn.2d at 795-96 (quoting State v. Smith, 93 Wn.2d 329, 337, 610 P.2d 869 (1980)).

We review questions of statutory interpretation de novo. State v. Conover, 183 Wn.2d 706, 711, 355 P.3d 1093 (2015). When interpreting a statute, our fundamental objective is to determine and give effect to the intent of the legislature. State v. Sweany, 174 Wn.2d 909, 914, 281 P.3d 305 (2012). To determine the plain meaning of

---

[3] Internal quotation marks omitted.

a statute, we look to the text as well as " 'the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole.' " State v. Bruch, 182 Wn.2d 854, 860, 346 P.3d 724 (2015) (quoting State v. Jacobs, 154 Wn.2d 596, 600, 115 P.3d 281 (2005)). Statutes must be read together to achieve a harmonious statutory scheme that maintains the integrity of the respective statutes. State v. Jones, 172 Wn.2d 236, 243, 257 P.3d 616 (2011).

Lewis contends the DNA fee statute violates equal protection as applied to a repeat felony offender. On its face, the statute does not draw such a distinction. But Lewis asserts that after an offender's DNA is "collected, tested, and entered into the database," imposition of another DNA fee on a repeat felony offender is not rationally related to the legislative purpose of the statute. The plain and unambiguous language of the DNA fee statute does not support the premise that the purpose of the fee is only for collection, analysis, and testing of an offender's DNA.

The legislature has repeatedly found the DNA database is an important tool for the investigation and prosecution of criminal cases, the exclusion of individuals subject to investigation or prosecution, the detection of recidivist acts, and the identification and location of missing and unidentified persons. Shelton, slip op. at 5.

In 2002, the legislature amended the DNA identification and database statute to require every person convicted of a felony offense to submit a DNA sample for DNA identification analysis. LAWS OF 2002, ch. 289, § 2. RCW 43.43.754(1) states, "A biological sample must be collected for purposes of DNA identification analysis from: (a) Every adult or juvenile individual convicted of a felony."

7

The legislature also adopted a new section that required the court to impose a $100 DNA fee "for collection of a biological sample as required under RCW 43.43.754, unless the court finds that imposing the fee would result in undue hardship." LAWS OF 2002, ch. 289, § 4.[4] The new section stated:

> Every sentence imposed under chapter 9.94A RCW, for a felony specified in RCW 43.43.754 that is committed on or after the effective date of this act, must include a fee of one hundred dollars for collection of a biological sample as required under RCW 43.43.754, unless the court finds that imposing the fee would result in undue hardship on the offender. The fee is a court-ordered legal financial obligation as defined in RCW 9.94A.030, payable by the offender after payment of all other legal financial obligations included in the sentence has been completed. The clerk of the court shall transmit fees collected to the state treasurer for deposit in the state DNA data base account created under section 5 of this act.

LAWS OF 2002, ch. 289, § 4.

In 2008, the legislature amended the DNA fee statute to delete the language "for collection of a biological sample as required under RCW 43.43.754, unless the court finds that imposing the fee would result in undue hardship on the offender." LAWS OF 2008, ch. 97, § 3. As amended, the plain and unambiguous language of former RCW 43.43.7541 (2008) states, "Every sentence imposed under chapter 9.94A RCW, for a crime specified in RCW 43.43.754 must include a fee of one hundred dollars."[5] RCW 43.43.7541 requires the clerk of the court to transmit 80 percent of the fee "to the state treasurer for deposit in the state DNA database account" and 20 percent "to the agency

---

[4] The imposition and recovery of court costs and fees was unknown at common law and is therefore entirely statutory. State v. Smits, 152 Wn. App. 514, 519, 216 P.3d 1097 (2009); State v. Cawyer, 182 Wn. App. 610, 619, 330 P.3d 219 (2014).

[5] In 2011, the legislature amended RCW 43.43.7541 to state, in pertinent part, that the DNA fee is "payable by the offender in the same manner as other assessments imposed." LAWS OF 2011, ch. 125, § 1.

responsible for collection of a biological sample." Former RCW 43.43.7541 (2008)

states:

> **DNA identification system—Collection of biological samples—Fee.**
> Every sentence imposed under chapter 9.94A RCW, for a crime specified
> in RCW 43.43.754 must include a fee of one hundred dollars. The fee is a
> court-ordered legal financial obligation as defined in RCW 9.94A.030,
> payable by the offender after payment of all other legal financial
> obligations included in the sentence has been completed. The clerk of the
> court shall transmit eighty percent of the fee collected to the state
> treasurer for deposit in the state DNA database account created under
> RCW 43.43.7532, and shall transmit twenty percent of the fee collected to
> the agency responsible for collection of a biological sample from the
> offender as required under RCW 43.43.754.

The DNA database account statute, RCW 43.43.7532, states expenditures from

the account "may be used only for creation, operation, and maintenance of the DNA

database under RCW 43.43.754."[6] RCW 43.43.7532 states, in pertinent part:

> The state DNA database account is created in the custody of the state
> treasurer. All receipts under RCW 43.43.7541 must be deposited into the
> account. Expenditures from the account may be used only for creation,
> operation, and maintenance of the DNA database under RCW 43.43.754.
> Only the chief of the Washington state patrol or the chief's designee may
> authorize expenditures from the account.

The plain and unambiguous language of the DNA fee statute establishes that the

primary purpose of the DNA fee is to fund not only the creation of the DNA database,

but the ongoing operation and maintenance of the state DNA database. Accord State v.

Thornton, 188 Wn. App. 371, 374-75, 353 P.3d 642 (2015) (RCW 43.43.7541 "furthers

the purpose of funding for the state DNA database and agencies that collect samples");

State v. Brewster, 152 Wn. App. 856, 860, 218 P.3d 249 (2009) ("The DNA collection

fee serves to fund the collection of samples and the maintenance and operation of DNA

databases.").

---

[6] Emphasis added.

9

We hold that because there is a rational basis to impose the fee for every felony sentence for the cost of collection as well as to fund the ongoing cost to operate and maintain the DNA database, the DNA fee statute does not violate equal protection. See State v. Johnson, No. 32834-1-III (consol. with No. 32846-5-III), 2016 WL 3124893, at *2 (Wash. Ct. App. June 2, 2016) (rejecting equal protection claim that the mandatory DNA fee statute, RCW 43.43.7541, results in a disparate impact on repeat offenders); State v. Olivas, 122 Wn.2d 73, 94-95, 856 P.2d 1076 (1993) (holding there is a rational relationship between the interest of the state under RCW 43.43.754 to investigate and prosecute sex offenses and violent offenses and "the application of the statute to this class of persons").

Order to Submit DNA Sample

Lewis also claims the trial court erred by ordering him to submit another DNA sample. RCW 43.43.7541 requires every sentence imposed for a crime specified in RCW 43.43.754 include a $100 DNA fee. However, the court has the discretion not to require a felony offender to submit a subsequent DNA sample. RCW 43.43.754(2) provides, "If the Washington state patrol crime laboratory already has a DNA sample from an individual for a qualifying offense, a subsequent submission is not required to be submitted."

The only evidence Lewis cites to support his claim that he has already submitted a DNA sample is Appendix B to the judgment and sentence that lists his criminal history from 1995 until 2004 for violation of the Uniform Controlled Substances Act. Nothing in the record shows that Lewis actually submitted a DNA sample or that the Washington State Patrol Crime Laboratory already has a DNA sample for a qualifying offense.

Because Lewis makes no showing that RCW 43.43.754(2) applies, the record does not support his argument that the court erred by ordering him to submit a DNA sample for testing. See Thornton, 188 Wn. App. at 374.

We affirm the judgment and sentence.

WE CONCUR: