

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 73945-0-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| KEVIN EUGENE HUTTON, | ) | |
| | ) | UNPUBLISHED OPINION |
| Appellant. | ) | |
| | ) | FILED: November 14, 2016 |

MANN, J. — A jury convicted Kevin Hutton of assaulting his ex-girlfriend and the police officer who arrested him shortly after the assault. The jury also convicted him of multiple violations of a no-contact order. Hutton appeals, asserting violations of RCW 26.50.110(4) and double jeopardy, instructional and evidentiary error, ineffective assistance of counsel, cumulative error, unlawful imposition of financial obligations, and clerical error. Because the State concedes that one of Hutton's convictions violates RCW 26.50.110(4), and because the judgment and sentence contains a clerical error, we reverse Hutton's conviction for felony violation of a court order and remand for imposition of misdemeanor violation of a court order and correction of the clerical error. We otherwise affirm.

FACTS

Based on allegations that Hutton assaulted Shamicia Jones and her mother in violation of a no-contact order, kicked a police officer, and repeatedly phoned Jones in violation of a no-contact order, the State charged him with two counts of felony violation of a court order, three counts of misdemeanor violation of a court order, and once count each of second and third degree assault. All counts except the assault of the officer included a domestic violence allegation.

At trial, Patricia King testified that she lives with her daughter, Shamicia Jones, and Jones' three boys. King said Jones and Hutton had an on-again off-again relationship and that Hutton sometimes spent the night at their residence.

King testified that on September 14, 2014, Hutton visited Jones. He began drinking vodka and showing signs of intoxication. King was sitting on the porch when she heard Jones and Hutton arguing about a cigarette. Hutton said "You can't give me a damn cigarette, bitch?" Jones said "no" and Hutton became "angrier and angrier."[1] Eventually, Jones gave Hutton a cigarette and walked toward the door to the porch. According to King, Hutton "rushed from the kitchen and hit her."[2] Jones was "knocked out" and had injuries to her mouth and face. King told Hutton "I ain't paying you shit I owe you."[3] Hutton became angry and hit King. She got up from the floor and rushed Hutton, but he pushed her out of the way and ran out of the house. King then called 911.

---

[1] Report of Proceedings (RP) (May 21, 2015) at 359.
[2] RP (May 21, 2015) at 360.
[3] RP (May 21, 2015) at 351.

During a break in King's testimony, defense counsel moved for a mistrial based on King's testimony about the children's reaction to the assault and suggestions that Hutton had a history of domestic violence. The court denied the motion. Defense counsel expressly declined to request a limiting instruction.

The court then admitted several exhibits, including the following stipulation:

1. There were <u>multiple no contact orders</u> issued by Seattle Municipal Court and King County Superior Court <u>for the protection of Shamicia Jones</u> prohibiting Kevin Hutton from contacting Ms. Jones and these orders were valid from 2013-2018.
2. There was also <u>an anti-harassment order</u> issued by the Seattle Municipal court <u>for the protection of Patricia King</u> prohibiting Kevin Hutton from contacting Ms. King and this order was valid from March 5, 2014 to March 6, 2016.
3. <u>Kevin Hutton had knowledge of all of these orders.</u>[4]

The parties further stipulated that four recorded phone calls were made on a certain date to Jones' phone number. If made by Hutton with knowledge of an existing no-contact order, the calls violated the order.

When King's testimony resumed, she identified Hutton's and Jones' voices on the recorded phone calls.

On cross-examination, defense counsel confronted King with statements she made to Seattle Police Officer Failautusi Sa'au. Officer Sa'au's report, which the court admitted as an exhibit, states in part:

> Patricia stated that she was in the living room next to the front door, which was open, with Shamica on the front porch. At approximately 15[:]55 hours, Kevin arrived at their residence requesting to gather his belongings.

---

4 Exhibit (Ex.) 15. (Emphasis added).

3

> Patricia stated Kevin was extremely intoxicated and was behaving aggressively. While on the front porch, Kevin asked Shamica for a cigarette, but he was denied. Kevin became extremely upset and began calling Patricia and Shamica names "bitches". Kevin approached Patricia, who was still standing on the front porch, and attempted to punch her. Kevin first swung with his left hand, (closed fist) and missed, nearly hitting Shamica's head. After dodging the initial punch, Shamica attempted to run into the house. Shamica did not make it far as Kevin immediately swung a second time with his right hand, (closed fist), striking the left side of Shamica's face. Patricia stated Shamica was instantly knocked unconscious and fell to the floor (the middle of the doorway). Patricia stated there was blood spatter, from the punch, on the front door.
>
> Patricia then stated Kevin began approaching her attempting to punch her in the face. Kevin first swung with his left hand but missed, (closed fist), nearly hitting her in the face. Kevin then immediately swung a second time with his right hand, (closed fist) striking her on the left side of her face. Patricia stated she was dazed, but did not lose conscious. Patricia stated her face was sore and that it was painful to touch.
>
> Patricia stated Kevin then fled on foot southbound on 9th AVE SW.[5]

During her testimony, King disagreed with some of the statements attributed to her in this report. She denied being inside the house immediately prior to the assault. She also denied that Hutton threw more than one punch, that he swung and missed her before hitting her, that Shamicia dodged the initial punch and ran into the house, and that the initial punch occurred on the porch.

Shamicia Jones testified that Hutton hit her in the face, causing her head to hit a wall and leaving her unconscious. She said Hutton was drinking that day and "[w]hen he drinks, he turns into somebody else."[6] According to Jones, the assault occurred after she expressed anger about Hutton's nitpicking with the children. She

---

[5] Ex. 22.
[6] RP (May 21, 2015) at 423.

4

did not mention cigarettes and said King was in a bedroom when Hutton hit her (Jones). She admitted she did not have a clear memory of the events.

Seattle Police Officer Ronald Mazziotti testified that on September 14, 2014, he responded to a 911 call reporting domestic violence. The court played a recording of the 911 call for the jury. It included the following exchange:

OPERATOR: 911. Hello?
(Transmission noise.)
OPERATOR: Seattle Police, 911.
(Crying sounds.)
OPERATOR: Hello? (Inaudible) I don't hear anything. I'm disconnecting.
(Dial tone.)
(Phone ringing.)
MS. KING: Hello?
OPERATOR: Hi, this is Seattle Police, 911.
MS. KING: Yeah, you all need to bring your mother fucking asses out here. He bust my -- my baby's mouth open. I'll get a towel.

. . . .

OPERATOR: How long ago did this happen?
MS. KING: Five minutes. That's been five minutes. He come back for me again, I'm going to cut him open.
OPERATOR: Okay. Who did it?
MS. KING: Her ex-boyfriend bust her in her damn mouth and ran out. He's going down -- he's walking down Ninth Avenue. . . . he hit her in the mouth.
OPERATOR: Last seen on southbound Ninth Avenue.

. . . .

MS. KING: He hit me and almost knocked me out.
DISPATCH: He hit both of you guys?
MS. KING: Yeah, he did.
[MS. KING describes and names Kevin Hutton]

. . . .

OPERATOR: Okay. All right. We'll be out there just as soon as we can, okay? Thanks.
MS. KING: All right. (Inaudible) he knocked my daughter out and almost knocked me out. . . .
(End of 911 call.)[7]

---

[7] RP (May 20, 2015) at 189-95. (Emphasis added).

Officer Mazziotti drove to the 911 caller's address and interviewed Patricia King and Shamicia Jones. King gave him a photograph of Hutton and a description of his hairstyle. Officer Mazziotti also found documentation belonging to Hutton in a backpack in the residence.

Approximately forty minutes after the initial dispatch report, another officer reported seeing a man matching the suspect's description several blocks from Jones' residence. The suspect, later identified as Hutton, initially gave officers a false name. King subsequently identified Hutton as her assailant during a show-up. Police arrested Hutton and placed him in Officer Mazziotti's patrol car.

While en route to Officer Mazziotti's precinct, Hutton began thrashing violently in the back seat and kicking the door and window. Officer Mazziotti stopped his car. Hutton got out of the car and had to be subdued with a Taser. As officers attempted to put him back in the car, Hutton kicked Officer Mazziotti in the chest. The court admitted an in-car video of the struggle and played it for the jury. The defense stipulated that Hutton told the officer "I kicked you, yeah I admit to that" and that when Officer Mazziotti said "The bitch is going [to] die?" Hutton said "Yeah."[8]

Emergency Medicine Physician Ian Doten testified that he treated Jones for her injuries, which included a scalp laceration and a cut through her lower lip and jaw. Jones told Dr. Doten that Hutton assaulted her with his fists and that she lost consciousness.

---

[8] Ex. 14.

Seattle Police Department Detective Jennifer Samson testified to the dynamics of domestic violence. Those dynamics commonly form a cycle, beginning with violence fueled by alcohol or drugs, followed by remorse and promises to change, followed by reunification and another incident of violence.

The court played four recorded phone calls between Hutton and Jones for the jury. One recording included the following conversation:

> MS. JONES: [The children are] having nightmares and shit.
> THE DEFENDANT: Aw (inaudible).
> MS. JONES: Yeah, you fucked them up.
> THE DEFENDANT: All right, babe. All right, babe. All right.
> MS. JONES: See, my face is puffed up.
> THE DEFENDANT: I see, babe. That's (inaudible).
>
> . . . .
>
> THE DEFENDANT: I messed up, man. Shit. This is my life, man. Damn. I'm sorry, man, you know? I even regret it (inaudible). You know what I mean? I mean, I'm sorry (inaudible). (Defendant singing) I'm sorry, babe. For not being (inaudible). I'm sorry, babe. So don't -- (inaudible). I'm sorry, babe. You know what, though? I'm officially done, though? I don't get (inaudible).
> MS. JONES: That's right.
> THE DEFENDANT: You know what I'm saying? But guess what, though? (Inaudible). It was good, though, because -- you know why it's good? Because I'm cool. I'm done. You know what I'm saying? (Inaudible). Guess what, though. Never again. That will never happen again. I know one fucking thing, alcohol – drugs period, is not for me.[9]

The defense called no witnesses. In closing argument, defense counsel argued that the State's case was "riddled with inconsistencies."[10] Counsel pointed to King's in-court denial of many of the factual assertions attributed to her in Officer Sa'au's report. Counsel argued that Jones had virtually no memory of the events and that King's testimony, with its inconsistencies, was insufficient to prove either second or third degree assault beyond a reasonable doubt standard. The prosecutor

conceded there were some inconsistencies between King's statement to the officer and her testimony. He argued, however, that she was consistent on the core facts and that there was no doubt Hutton committed the assaults and no evidence that the blows were accidental.

The jury acquitted Hutton of felony violation of a court order against King but convicted him on all other counts, including the assault and felony violation of a court order against Jones. Hutton appeals.

ANALYSIS

Violation of RCW 26.50.110(4)

Hutton first contends his convictions for the second degree assault of Jones and felony violation of a court order violate RCW 26.50.110(4) and double jeopardy. RCW 26.50.110(4) precludes the use of second-degree assault to elevate a misdemeanor violation of a court order to a felony.[11] See State v. Ward, 148 Wn.2d 803, 810-12, 64 P.3d 640 (2003) (under RCW 26.50.110(4), second degree assault cannot serve as the predicate offense that raises misdemeanor violation of a court order to a felony); State v. Azpitarte, 140 Wn.2d 138, 141, 995 P.2d 31 (2000) (same). Because Hutton's second degree assault of Jones was the basis for elevating his violation of a court order to a felony, Hutton claims the felony violation of a court order conviction violates RCW 26.50.110(4). He also contends the appropriate remedy for a violation of either RCW 26.50.110(4) or double jeopardy is to vacate the felony

---

[9] RP (May 26, 2015) at 512-14. (Emphasis added).
[10] RP (May 26, 2015) at 582.

8

violation of a court order conviction and impose the lesser included offense of misdemeanor violation of a court order.

The State does not address Hutton's double jeopardy claim, but concedes that the felony violation of a court order conviction violates RCW 26.50.110(4). The State also concedes that vacation of that conviction and imposition of the lesser included misdemeanor offense is the appropriate remedy given that the jury was instructed on, and necessarily found the elements of, the misdemeanor. In re Pers. Restraint of Heidari, 174 Wn.2d 288, 274 P.3d 366 (2012) (remand for imposition of lesser offense is appropriate where jury was instructed on and found the elements of the lesser offense).

We accept the State's concessions,[12] reverse count one, and remand for entry of the lesser included misdemeanor violation of a court order.[13]

Self-Defense Instruction

Hutton next contends the trial court abused its discretion in denying his request for a self-defense instruction on counts one and two. We disagree.

A defendant is entitled to a self-defense instruction if he produces "some evidence" that he acted in self-defense. Werner, 170 Wn.2d 333, 336-37, 241 P.3d 410 (2010); State v. Riley, 137 Wn.2d 904, 909, 976 P.2d 624 (1999). To establish

---

[11] RCW 26.50.110(4) provides in pertinent part that "Any assault that is a violation of [a no-contact] order . . . and that does not amount to assault in the first or second degree . . . is a class C felony." (Emphasis added).

[12] We need not reach Hutton's claim that the convictions violate double jeopardy since the issue can be resolved on a nonconstitutional basis under RCW 26.50.110(4) and Azpitarte. State v. Smith, 104 Wn.2d 497, 707 P.2d 1306 (1985) (a court will not reach constitutional issues if they can be decided on nonconstitutional grounds).

9

self-defense, " 'there must be evidence that (1) the defendant subjectively feared that he was in imminent danger of . . . great bodily harm; (2) this belief was objectively reasonable; [and] (3) the defendant exercised no greater force than was reasonably necessary.' " Werner, 170 Wn.2d at 337 (quoting State v. Callahan, 87 Wn. App. 925, 929, 943 P.2d 676 (1997)). "The trial court is justified in denying a request for a self-defense instruction only where no credible evidence appears in the record to support a defendant's claim of self-defense." State v. McCullum, 98 Wn.2d 484, 488, 656 P.2d 1064 (1983). We review a court's determination that the evidence did not support a self-defense instruction for abuse of discretion. State v. Read, 147 Wn.2d 238, 243, 53 P.3d 26 (2002).

Hutton contends a self-defense instruction was warranted because "an intoxicated Mr. Hutton could have perceived a need to act in self-defense when Shamicia got angry and said something" "that pissed him off [.]"[14] He claims the evidence "shows she (at least verbally) approached Mr. Hutton with anger immediately before she was hit."[15] But evidence of Shamicia's anger does not support an inference that Hutton feared bodily harm. There was no evidence that Shamicia's angry words were accompanied by physical aggression or anything Hutton might reasonably have perceived as an imminent threat of bodily harm. Hutton's intoxication does not rectify this deficiency in the evidence. The trial court did not abuse its discretion in denying

---

[13] The parties agree that reversal of the felony violation of a court order count makes it unnecessary to reach Hutton's claim that the second degree assault and felony violation of a court order counts were the same criminal conduct for sentencing purposes.

[14] Reply Br. of Appellant at 2-3.

[15] Reply Br. of Appellant at 2-3.

Hutton's request for a self-defense instruction. Cf. Riley, 137 Wn.2d at 912 ("mere words alone do not give rise to reasonable apprehension of great bodily harm.")

Evidence that Children Witnessed Assault

Hutton argues that the court abused its discretion in overruling his objections to testimony that Jones' children witnessed and reacted to the assault. The objections occurred in the following exchange:

> [PROSECUTOR]: And did -- now, you've already told us how Ms. Jones was laid out on the ground, she was knocked out. Did her children witness that?
>
> [KING]: The two small ones did. Deshawn was outside playing, Major and Apollo, they were -- when I was -- when I was coming back up from the hit that he did to me, when I realized and rushed him, after he ran out, they were standing right there. So they might have been in one or two, the first -- the second bedroom or the third, I don't know. They were running back and forth out to the front, you know. Because when they fight. They hide. They like get out the way.
>
> . . .
>
> [DEFENSE COUNSEL]: Objection, 403 as to this portion of the answer.
>
> THE COURT: I don't know what you're talking about. You have to state your specific objection so I can rule on it.
>
> [DEFENSE COUNSEL]: Objection, prejudicial as to the children.
>
> THE COURT: Overruled.
>
> [PROSECUTOR]: Now, you said that the children were present. What -- now, what -- not what they said, but what was their reaction?
>
> [KING] Scared, crying. Crying.
>
> [DEFENSE COUNSEL]: Same objection.
>
> THE COURT: Overruled.[16]

_____

[16] RP (May 21, 2015) at 366. (Emphasis added).

11

Hutton contends his objections should have been sustained because the evidence was irrelevant and "more prejudicial than probative" under ER 401 and ER 403.[17] But Hutton's trial counsel did not object on those grounds below. Rather, counsel simply claimed the evidence was "prejudicial as to the children."[18] The court properly overruled that objection. The mere fact that evidence is prejudicial is not grounds to exclude it. State v. Rice, 48 Wn. App. 7, 13, 737 P.2d 726 (1987) (noting that "[a]lmost all evidence . . . is used to convince the trier of fact to reach one decision rather than another," and that admissibility turns on whether the evidence is unfairly prejudicial).

Hutton's other arguments on this issue are raised for the first time on appeal and need not be considered. State v. Price, 126, Wn. App. 617, 637, 109 P.3d 27 (2005) (if a party objects to the admission of evidence on one ground at trial, that party may not assert on appeal a different ground for excluding the evidence); RAP 2.5(a).

Evidence Suggesting a History of Domestic Violence

Hutton argues that portions of Patricia King's testimony were inadmissible under ER 404(b) and the court's pretrial ruling in limine. We review a court's decision to admit or exclude evidence for abuse of discretion. State v. Ashley, 186 Wn.2d 32, 38-39, 375 P.3d 673 (2016). The appellant bears the burden of demonstrating an abuse of discretion. Ashley, 186 Wn.2d at 38-39. Hutton fails to demonstrate any abuse of discretion.

---

[17] Br. of Appellant at 17.
[18] RP (May 21, 2015) at 366.

As noted above, the trial court ruled in limine that prior domestic violence evidence would be excluded unless Hutton opened the door to it. During King's testimony, the following exchanges occurred:

> [PROSECUTOR]: At what point in this sequence of events did you call 911?
>
> [KING]: . . . I got the phone and I called 911. And I was -- I said something to make them get there. I was like, Oh, he gots a gun and you guys need to get here really quick. And they got there really quick.
> So I - - because I'm fed up. I'm just fed up with him getting away with doing what he's doing. I'm just tired of it. I'm just tired of it.[19]

Defense counsel did not object. King returned to this subject later in her testimony:

> [PROSECUTOR] What was the purpose of that [911] call?
>
> [KING]: He hit my daughter and he hit me and knocked her out. I don't want to curse, but I'm just eff -- fed up with the fighting and stuff. I'm just tired of it.
>
> [DEFENSE COUNSEL]: Objection. 404(b).
>
> THE COURT: Let's ask another question.[20]

At the next recess, defense counsel moved for a mistrial, arguing in part that the emphasized testimony suggested a history of prior domestic violence in violation of ER 404(b) and the ruling in limine. Counsel stated that a limiting instruction would be insufficient to cure the error and that the prosecutor had failed "to ask questions carefully" so as "not to elicit answers that are inadmissible [.]"[21] The court denied the mistrial motion:

> THE COURT: Well, there was a motion in limine regarding prior history, yes?

---

[19] RP (May 21, 2015) at 368. (Emphasis added).
[20] RP (May 21, 2015) at 375-76. (Emphasis added).
[21] RP (May 21, 2015) at 386.

[DEFENSE COUNSEL]: Correct.

THE COURT: Okay. So . . . the State was not permitted to elicit anything about prior history, right? So he's not supposed to ask witnesses questions about, you know, did he have -- did they have prior fights in the past, for instance.

But we're not talking about that right now. <u>What we're talking about is a witness blurting out something, about. I'm sick of this, something to that effect. She didn't say he ever hit her before, but she just basically said something to the effect of along the -- I'm sick and tired of whatever, their behavior, or their relationship, something like that. I don't remember her ever saying that he hit her before. So I don't think there's a basis for a mistrial.</u>

But that's what I'm just cautioning, because you know, it's -- as you well know, as you both well know, when the witness is on the stand, you kind of lose a little bit of control about what comes out of their mouth. So I think it's important that we caution her not to talk about, you know, these things, because we're going to get into areas that really we shouldn't. That's all.[22]

Hutton does not challenge the court's mistrial ruling. Instead, he challenges the court's individual evidentiary rulings under the court's pretrial ruling and ER 404(b)[23].

With respect to King's initial nonresponsive answer about being "fed up with him getting away with doing what he's doing," Hutton's trial counsel did not make a contemporaneous objection. When he finally did object during the next recess, he did not ask the court to strike the testimony and expressly declined to seek a curative instruction. Instead, he moved for a mistrial. Hutton does not challenge the court's mistrial ruling. To the extent he now claims the court should have done something other than grant a mistrial, his argument is raised for the first time on appeal and need

---

[22] RP (May 21, 2015) at 384-85.
[23] ER 404(b) limits the admission of prior bad acts:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

not be addressed. RAP 2.5(a); State v. Gresham, 173 Wn.2d 405, 433, 269 P.3d 207 (2012) (evidentiary errors under ER 404(b) are not constitutional errors). In any event, we concur with the trial court's conclusion that King's testimony was nonresponsive and only vaguely suggested a prior history. As such, it arguably did not violate ER 404(b) or the ruling in limine and was readily curable via a curative instruction. Hutton fails to demonstrate any abuse of discretion in the court's handling of this testimony.

Hutton's trial counsel did object to King's subsequent testimony that she was "fed up with the fighting and stuff. I'm just tired of it."[24] But again, this testimony was nonresponsive and arguably suggested nothing more than a history of discord in the relationship. The court did not abuse its discretion in simply steering the exchange away from the topic.

Finally, Hutton contends the court abused its discretion in admitting a portion of a recorded phone call in which he told Jones "I'm sorry babe, of all of things I've done to you. Baby, I'm sorry, boo, of all the things."[25] Hutton argued below that this statement "implies a domestic violence history."[26] But like the evidence discussed above, Hutton's vague statements did not necessarily refer to any prior domestic violence or violate ER 404(b). State v. McCarthy, 178 Wn. App. 90, 312 P.3d 1027 (2013) (witness' vague reference to "other things" the defendant had done "did not tell the jury anything" about prior bad acts). To the extent the statements implied such a history, the court could have properly concluded that their probative value—which included Hutton's remorse for the current charges and his remorse's part in the cycle

---

[24] RP (May 21, 2015) at 376.
[25] RP (May 26, 2015) at 472.

of domestic violence described by Detective Samson—outweighed any prejudice from a vague reference to other "things" he'd done. There was no abuse of discretion.

In any case, any evidentiary errors were harmless. Errors under ER 404(b) are harmless unless there is a reasonable probability that the verdict would have been materially different but for the error. Gresham, 173 Wn.2d at 433. There is no reasonable probability that the evidence challenged in this case affected the verdicts. The State's case on the counts resulting in conviction was well established. The core facts in King's and Jones' testimony were bolstered, and in some instances corroborated, by objective and/or undisputed evidence. That evidence included the 911 call, blood spatter evidence consistent with King's account of the assault on Jones, Officer Sa'au's report,[27] Dr. Doten's testimony regarding Jones' statements in the emergency room, the recorded phone calls, Hutton's remorse and tacit admission in one of the phone calls, Hutton's violent behavior in the patrol car, the in-car video, and Hutton's admission that he said "I kicked you, yeah I admit to that" to Officer Mazziotti.[28] The jury also heard evidence of Hutton's flight from the scene, his use of a false name, and his violent interaction with police after his apprehension. Furthermore, the prosecutor's closing argument did not focus on, or even expressly mention, the challenged testimony. And any vague suggestions of prior domestic violence were essentially cumulative of the stipulated evidence that Hutton had

---

[26] RP (May 26, 2015) at 472.

[27] With respect to the assault of Jones, Officer Sa'au's report corroborated King's testimony that Hutton was intoxicated and behaving aggressively before the assault, that the assault was triggered by an argument over a cigarette, that Hutton called Jones a "bitch," RP (May 21, 2015) at 358, Ex. 22, that he punched Jones and knocked her unconscious in the doorway, and that there was blood spatter in that area. Ex. 22.

multiple prior no-contact orders and an anti-harassment order "for the protection of" Shamicia Jones and Patricia King.[29]

There is no reasonable probability that the challenged evidence was material to the verdicts.

Ineffective Assistance of Counsel

Hutton next argues that to the extent his counsel failed to preserve the evidentiary issues discussed above, he received ineffective assistance of counsel. To succeed on this claim, Hutton must demonstrate both deficient performance and resulting prejudice—i.e. a reasonable probability that, but for counsel's omissions, the result of the proceeding would have been different. State v. Thomas, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987) (applying Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). "Only in egregious circumstances, on testimony central to the State's case, will the failure to object constitute incompetence of counsel justifying reversal." State v. Madison, 53 Wn. App. 754, 763, 770 P.2d 662 (1989). The testimony challenged on appeal was not central to the State's case. And for the reasons mentioned above, there is no reasonable probability that any deficient performance affected the outcome of the trial.

Cumulative Error

Hutton contends he should receive a new trial due to cumulative error. While errors that do not individually require reversal may still collectively deny a defendant a fair trial under the cumulative error doctrine, State v. Davis, 175 Wash.2d at 287, 345,

---

[28] Ex. 14.

290 P.3d 43 (2012). "The doctrine does not apply when the errors are few and have little or no effect on the outcome of the trial." State v. Weber, 159 Wn.2d 252, 279, 149 P.3d 646 (2006).

Financial Obligations

Hutton's sentence includes a mandatory $500 victim penalty assessment (VPA) and a mandatory $100 deoxyribonucleic acid (DNA) fee. For the first time on appeal, Hutton contends "[t]he relevant statutes and rules," including GR 34, "prohibit imposing [financial obligations] on impoverished defendants, [and] reading these provisions otherwise violates due process and the right to equal protection."[30] Hutton's arguments are controlled by recent decisions of this court. State v. Shelton, 194 Wn. App. 660, 378 P.3d 230 (2016) (holding that preenforcement due process challenge to mandatory DNA fee was neither ripe nor manifest constitutional error and therefore could not be raised for first time on appeal, that Legislature divested courts of discretion to consider ability to pay when imposing mandatory financial obligations, and that State v. Blazina, 182 Wn.2d 827, 344 P.3d 680 (2015) does not apply to mandatory financial obligations); State v. Tyler, 195 Wn. App. 385, 404 n.11, __ P.3d __ (2016) (applying Shelton to mandatory VPA and rejecting argument that RCW 10.01.160(3) applies to mandatory financial obligations); State v. Mathers, 193 Wn. App. 913, 923-24, 376 P.3d 1163 (2016) (holding that GR 34 applies to waiver of filing fees, not criminal costs, and rejecting equal protection and due process arguments based on GR 34, Jafar v. Webb, 177 Wn.2d 520, 303 P.3d 1042 (2013), and Fuller v.

---

[29] Ex. 15.

Oregon, 417 U.S. 40, 94 S. Ct. 2116, 40 L. Ed. 2d 642 (1974)); State v. Lewis, 194 Wn.App. 709, 379 P.3d 129 (2016) (because there is a rational basis to impose DNA fee for every felony sentence, DNA fee statute does not violate equal protection); State v. Seward, No. 47581-2-II (Wash. Ct. App. Nov. 1, 2016), http://www.courts.wa.gov/opinions/ pdf/D2%2047581-2-II%20Published%20Opinion.pdf (reaching and rejecting due process challenges to DNA fee and VPA, and rejecting argument that mandatory financial obligation statutes must be harmonized with RCW 10.01.160(3)). We adhere to these decisions.

## Clerical Error

The parties agree, and we concur, that the judgment and sentence contains an erroneous reference to an aggravating factor that the State withdrew at sentencing. Finding of Fact 2.1(j). The trial court is directed to remove the reference from the judgment and sentence on remand.

## Costs on Appeal

Hutton asks that we not impose costs on appeal under RAP 14.2. That rule allows a commissioner or clerk to award costs to the party that "substantially prevails" on review, "unless the appellate court directs otherwise in its decision terminating review." The rule expressly prohibits an award of costs if neither party substantially prevails. We conclude there is no substantially prevailing party in this appeal; therefore, no costs are imposed under RAP 14.2.

---

[30] Br. of Appellant at 27.

No. 73945-0-I/20

Affirmed in part and reversed and remanded in part.

Mann, J.

WE CONCUR:

Cox, J.

Dwyer, J.

20