FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2017 JUL 31 AM II: 07

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 75091-7-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ABDIRAHMAN MOHAMED ISMAIL, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED:  July 31, 2017 |
| | ) | |

VERELLEN, C.J. — Abdirahman Ismail appeals his conviction for domestic violence felony violation of a no-contact order.  Ismail challenges the trial court's admission of his two prior convictions for violation of a no-contact order, not merely to prove an element necessary to establish a felony violation, but also to prove knowledge.  Without deciding if the trial court improperly admitted evidence of Ismail's prior convictions to prove knowledge, we conclude that any alleged error was harmless because Ismail has not shown, within reasonable probabilities, that admission of the convictions for this purpose materially affected the outcome of the case.  We also conclude that Ismail's prosecutorial misconduct claim fails because he does not show that there was a reasonable probability that the prosecutor's argument materially affected the outcome of the trial.  Finally, because Ismail's constitutional challenge to the imposition of the mandatory victim penalty assessment and the deoxyribonucleic acid collection fee is premature, we decline to review it.  We affirm.

## FACTS

On June 1, 2015, several witnesses called 911 to report a black male assaulting a white female near a bus stop in Federal Way. Officers Seth Hanson and Kelly Smith responded within minutes of the calls. The officers spotted Abdirahman Ismail and Cara Tobin standing on the sidewalk a couple of yards apart from each other. As the officers drove closer, Tobin and Ismail started walking away in opposite directions. Officer Smith detained Ismail.

Ismail gave the officers a false name and birthdate. A portable fingerprint scan revealed Ismail's true identity and the fact that there was a no-contact order restraining him from contacting Tobin. The order was issued on March 7, 2014 and was valid until March 7, 2016. Ismail denied assaulting Tobin and told the officers he had just met her for the first time.

Officer Hanson found Tobin nearby. She was "disheveled," crying, and did not want to interact with the officer.[1]

The State charged Ismail with one count of felony violation of a no-contact order under RCW 26.50.110(1), (5). The charging document alleged that on June 1, 2015, Ismail

> did know of and willfully violate the terms of a court order issued on March 7, 2014 by the King County Superior Court pursuant to RCW chapter 10.99, for the protection of Cara Linn Tobin, and at the time of the violation having at least two prior convictions for violating the provisions of an order issued under RCW chapter 10.99, 26.50, 26.09, 26.10, 26.26, or 74.34, or under a valid foreign protection order as defined in RCW 26.52.020.[2]

---

[1] Report of Proceedings (RP) (Jan. 28, 2016) at 174.

[2] Clerk's Papers (CP) at 1.

The State separately alleged that the crime was committed "against a family or household member; a crime of domestic violence as defined under RCW 10.99.020."[3]

At trial, Officer Smith identified Ismail in court and by a certified copy of Ismail's Washington photo identification card as the person he contacted on June 1, 2015. The officers also identified Tobin by a photograph Officer Hanson took of her at the scene and by a certified copy of her Washington photo identification card as the person they contacted on June 1, 2015. Officer Hanson also testified that he had seen Ismail and Tobin arguing at the same bus stop earlier in his shift. The State introduced a video taken from a Safe City light pole camera into evidence that showed Ismail and Tobin in a dispute just as the officers arrived on scene.[4] The State also introduced court documents into evidence showing Ismail had two prior convictions for violation of a no-contact order.

Tobin testified very briefly at trial and confirmed her identity. When asked if she knew Ismail by name, Tobin initially testified that she knew him. Although she referred to Ismail by his full name, including his middle name, Tobin later testified that she did not know him and that she knew nothing about the June 1, 2015 incident. While a sidebar was taken to address her testimony, Tobin left the courtroom and did not return.

The jury convicted Ismail as charged and additionally found that the violation of the no-contact order was committed against a family or household member. The court imposed a sentence of 60 months.

Ismail appeals.

---

[3] CP at 2.

[4] The video is not part of the record on appeal.

## ANALYSIS

Ismail contends that the trial court erred in admitting his two prior convictions for violation of a no-contact order under ER 404(b) to prove knowledge.[5] This occurred, Ismail asserts, after the State rejected his offer to stipulate to the two prior convictions, an element necessary to establish a felony violation. But Ismail's proposed stipulation was contingent upon his request that the stipulation not be heard or considered by the jury, in effect, removing the prior conviction element from the jury's consideration.[6] Therefore, the State was not required to agree to stipulate.

This court reviews a trial court decision to admit or exclude evidence for abuse of discretion.[7] We reverse only if the trial court made a manifestly unreasonable decision or based its decision upon untenable grounds or reasons.[8]

If a trial court improperly admits evidence of a defendant's earlier bad acts, this "error is harmless if the evidence is of minor significance compared to the overall evidence as a whole."[9] But this court must reverse if, "'within reasonable probabilities,

---

[5] The State argued the prior convictions would establish Ismail knew "what the elements of the crime are, which would explain his behavior . . . of trying to walk away and giving a false name." RP (Jan. 25, 2016) at 56.

[6] See State v. Roswell, 165 Wn.2d 186, 196-98, 196 P.3d 705 (2008) (holding that a defendant charged with a crime for which the defendant's prior convictions constitute an element which raises the level of the crime from a misdemeanor to a felony cannot waive his right to a jury trial on a prior conviction element and thereby effectively bifurcate the trial so that the judge would decide the criminal history element and the jury would decide the other elements).

[7] State v. Gunderson, 181 Wn.2d 916, 922, 337 P.3d 1090 (2014).

[8] Id. (quoting State v. Brown, 132 Wn.2d 529, 572, 940 P.2d 546 (1997)).

[9] State v. Everybodytalksabout, 145 Wn.2d 456, 468-69, 39 P.3d 294 (2002).

had the error not occurred, the outcome of the trial would have been materially different."[10]

We do not decide if the trial court improperly admitted evidence of Ismail's two prior convictions to prove he knowingly violated a no-contact order because any error in admitting the prior convictions for this purpose was harmless. Here, overwhelming evidence, including a video and eyewitness testimony, showed that Ismail and Tobin were together. None of that evidence suggests Tobin initiated the contact,[11] or that Ismail accidentally or inadvertently contacted Tobin but immediately broke it off.[12] Measuring the testimony of the State's witnesses and the video evidence against any prejudicial effect from the admission of the prior convictions to prove knowledge, we conclude that it is not reasonably probable that the outcome of the trial would have been different had the prior convictions not been admitted for this purpose.

---

[10] State v. Gresham, 173 Wn.2d 405, 425, 269 P.3d 207 (2012) (internal quotation marks omitted) (quoting State v. Smith, 106 Wn.2d 772, 780, 725 P.2d 951 (1986)).

[11] One 911 caller reported, "[T]here's a black guy who looks like he's trying to grab a lady's uh, purse." Exhibit 12 at 2. Another said a black male was "pullin' on this lady . . . she says she doesn't wanna be with him and he's draggin' her across the street hittin' her and shit." Exhibit 13 at 1. This caller added, "Jesus Christ, looks like every time she tries to walk away from him though he uh, goes and grabs her and uh, tries pullin' her." Exhibit 13 at 5. A third caller described a black male "beatin' up his girlfriend. He drug her across the street and now they're at the . . . bus stop." Exhibit 15 at 1. A fourth caller reported that a black male was "beating up a lady" and that "he punched her in the face a couple of times." Exhibit 21 at 1-2. One of the 911 callers testified at trial and also identified Ismail as the person she saw dragging a woman across the street. This witness also identified Tobin from a photograph taken at the scene by one of the officers as the woman she observed being assaulted by Ismail.

[12] See State v. Sisemore, 114 Wn. App. 75, 78, 55 P.3d 1178 (2002) (defendant under a domestic violence no-contact order violated the no-contact order if he knowingly acted to contact or continue contact after an original accidental contact; he did not violate the no-contact order if he accidentally or inadvertently contacted the woman protected by the order but immediately broke it off).

*Prosecutorial Misconduct*

Ismail contends that his conviction must be reversed because the prosecutor used his prior convictions for an improper purpose in closing argument.

To establish prosecutorial misconduct, the defendant must show that the prosecutor's comments were "'both improper and prejudicial in the context of the entire record and circumstances at trial.'"[13] Prosecutorial misconduct does not constitute prejudicial error unless "there is a substantial likelihood that the instances of misconduct affected the jury's verdict."[14]

Here, Ismail requested and received a limiting instruction under ER 404(b): "You may consider evidence that the defendant has been convicted of a crime only in deciding (1) whether or not the State has met the element regarding prior convictions; and (2) whether or not the State has proven knowledge; and for no other purpose."[15]

During closing argument, the prosecutor discussed the evidence which proved Tobin and Ismail had been in a domestic relationship in order for the jury to answer "yes" to the question in the special verdict form. The prosecutor pointed out that the no-contact order and Ismail's prior convictions all showed that Tobin and Ismail had been in a dating relationship in the past. Ismail objected, arguing that the limiting instruction did not allow for such argument. The court overruled the objection.

Even if the prosecutor's argument was improper under the limiting instruction, Ismail fails to show resulting prejudice. As the trial court noted in overruling the

---

[13] State v. Thorgerson, 172 Wn.2d 438, 442, 258 P.3d 43 (2011) (quoting State v. Magers, 164 Wn.2d 174, 191, 189 P.3d 126 (2008)).

[14] State v. Brett, 126 Wn.2d 136, 175, 892 P.2d 29 (1995).

[15] CP at 86.

objection, the admitted prior convictions and no-contact order both recited that Ismail

and Tobin had been in a domestic relationship.[16] Ismail does not show that there was a

reasonable probability that the prosecutor's argument materially affected the outcome of

the trial.

*Mandatory Legal Financial Obligations*

For the first time on appeal, Ismail argues that the mandatory victim penalty

assessment (VPA) under RCW 7.68.035 and the deoxyribonucleic acid (DNA) collection

fee under RCW 43.43.7541 violate substantive due process when a court imposes them

on an indigent defendant. This argument is premature.

We squarely addressed Ismail's argument in State v. Shelton.[17] "The due

process clause protects an indigent offender from incarceration based solely on inability

to pay court ordered fees."[18] But "[a] preenforcement constitutional challenge to the

mandatory [legal financial obligations] is ripe for review on the merits if the issue raised

is primarily legal, does not require further factual development, and the challenged

action is final."[19] Thus, "constitutional challenge[s] to the DNA fee [and VPA] statute[s]

[are] not ripe for review until the State attempts to enforce collection of the fee[s]. '[T]he

---

[16] See Exhibit 22 ("The court further finds that the defendant's relationship to a person protected by this order is an intimate partner (former/current spouse; parent of common child; former/current dating; or former/current cohabitants).").

[17] 194 Wn. App. 660, 674, 378 P.3d 230 (2016), review denied, 187 Wn.2d 1002 (2017); see also State v. Lewis, 194 Wn. App. 709, 714-15, 379 P.3d 129, review denied, 186 Wn.2d 1025, 385 P.3d 118 (2016).

[18] Shelton, 194 Wn. App. at 670.

[19] Id.

relevant question is whether the defendant is indigent at the time the State attempts to sanction the defendant for failure to pay.'"[20]

Moreover, a defendant cannot show that an as-applied substantive due process claim is manifest constitutional error until the State seeks to enforce collection of the fees or impose a sanction for failure to pay.[21]

As in Shelton, nothing in this record shows either that the State has attempted to collect the VPA or the DNA fee or that it has imposed sanctions for failure to pay.[22] Therefore, Ismail's as-applied substantive due process challenges are not ripe for review.

Moreover, RAP 2.5(a)(3) bars Ismail from raising his challenge for the first time on appeal because the claimed error is not "manifest" "[u]ntil the State seeks to enforce collection of the . . . fee or impose a sanction for failure to pay."[23] The record contains no information about Ismail's future ability to pay the DNA collection fee and the VPA.

Although we must consider the risk of hardship to the parties, "the potential risk of hardship does not justify review before the relevant facts are fully developed."[24] This record contains no facts regarding Ismail's future ability to pay.

Accordingly, we decline to review Ismail's constitutional challenge to the DNA collection fee and VPA.

---

[20] Id. at 672-73 (last alteration in original) (quoting State v. Sanchez Valencia, 169 Wn.2d 782, 789, 239 P.3d 1059 (2010)).

[21] Id.

[22] See id. at 673.

[23] Id. at 675; see also State v. Stoddard, 192 Wn. App. 222, 228-29, 366 P.3d 474 (2016).

[24] Shelton, 194 Wn. App. at 670, 672.

Affirmed.[25]

WE CONCUR:

---

[25] The State does not seek costs on appeal.