# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 76155-2-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| SAID I. MABRUK, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: June 18, 2018 |

2018 JUN 18 AM 9:47 FILED COURT OF APPEALS DIV 1 STATE OF WASHINGTON

LEACH, J. — Said Mabruk appeals the judgment and sentence for his convictions for first degree child molestation, second degree child molestation, unlawful imprisonment, and three counts of fourth degree assault. He contends that the trial court erred by (1) requiring one of his attorneys to conduct voir dire in the absence of co-counsel, (2) admitting evidence that the victim had been exposed to the virus causing genital herpes, (3) prohibiting his attorneys from questioning potential jurors about genital herpes, and (4) imposing community custody conditions that are not crime related. We remand for the trial court to strike the challenged community custody conditions. In all other respects, we affirm.

## FACTS

Said Mabruk and Nurayne Adem were married in Ethiopia and had four children together: son M.I. (date of birth May 12, 2001), daughter W.I. (date of

birth November 11, 2002), son A.I. (date of birth December 16, 2004), and daughter Z.I. (date of birth June 17, 2007). Around 2007 or 2008, Adem moved to Dubai to obtain work cleaning houses. In 2011, Mabruk moved with the four children to Seattle, where he worked as a taxicab driver.

In 2015, W.I. was in fifth grade. During a discussion about "appropriate versus inappropriate touch" in her elementary school health class, W.I. became very upset and started to cry. W.I. told a friend that Mabruk sexually abused her and physically abused all four siblings. The friend convinced W.I to tell a teacher. The State charged Mabruk with first degree child molestation, second degree child molestation, unlawful imprisonment, and three counts of fourth degree assault with a domestic violence aggravator.

W.I. testified that Mabruk began sexually abusing her when she was in the second grade. She testified that Mabruk touched her breasts and her vaginal area and rubbed his penis against her vagina. W.I. testified that this happened approximately every other night. Mabruk told W.I. that "all of his friends do it with their daughters" and not to tell anyone about it. All four children testified that Mabruk would regularly hit them, step on their hands, or tie their hands behind their backs.

A jury convicted Mabruk as charged. Mabruk appeals.

## ANALYSIS

1.  Right to Counsel

Mabruk contends that one of his court-appointed attorneys did not have the requisite experience required by the standards for indigent defense. He claims that the trial court violated his right to counsel when it required this attorney to conduct a portion of voir dire in the absence of co-counsel.

Attorneys Mark Adair and Jennifer Shotwell represented Mabruk at trial. At the time of trial, Shotwell had been a licensed attorney for 6 years. She had never represented a defendant charged with a class A felony or a sex offense.[1]

On the second day of jury selection, Adair was absent due to illness. Shotwell asked to recess the trial that day. The State did not object, and the trial court granted the recess. The following day, Adair was present. Parties continued with hardship exemptions and individual questioning of potential jurors.

Parties reconvened the following Monday for general questioning of potential jurors. Adair was again absent due to illness. Shotwell stated, "But having participated in the first couple of rounds of the individual voir dire, I am fine doing this today without him. He will obviously be present tomorrow."

Adair was still absent the next day. Shotwell requested another recess. She stated that she was uncomfortable proceeding without Adair due to her lack of experience. The State objected, citing numerous prior delays and the difficulty

---

[1] Adair's qualifications are not part of the record.

of rescheduling witnesses. The trial court denied the recess. Shotwell requested to "step out and notify the supervisor who may want to come over and step in." Shotwell's supervisor, Benjamin Goldsmith, came to the courtroom to observe.[2]

After individual questioning, Shotwell again objected to proceeding with general voir dire without Adair present: "I don't think that it is effective assistance of counsel, particularly given the fact that as I said I haven't tried a sex case, or picked a jury on a sex case. I haven't tried a class A case." The trial court agreed to give the defense additional time for general voir dire so that Adair could participate in a portion of it the following morning.

_____

[2] The record is unclear as to when Goldsmith arrived. The only reference to his appearance took place the following day, October 5:

> THE COURT: I want to note that yesterday the defense made a motion to recess for yesterday due to Mr. Adair's illness with us during the proceedings yesterday.
> Ms. Shotwell was the supervising attorney from your office; is that right?
>
> MS. SHOTWELL: That is correct, Your Honor.
> In order to comply with the standards for indigent defense, I felt like Mr. Goldsmith really needed to be here. He was here.
>
> THE COURT: What is Mr. Goldsmith's first name?
>
> MS. SHOTWELL: Benjamin, my supervisor.
>
> THE COURT: I want to note, as I expect you did yesterday.

The following day Adair remained ill. The State agreed not to call any witnesses that day, and Shotwell did not object to completing general voir dire without Adair.[3]

Our federal and state constitutions each guarantee a defendant the right to counsel at all critical stages of a criminal prosecution.[4] We review claims of a denial of the right to counsel de novo.[5]

CrR 3.1(d)(4) provides that an attorney for an indigent defendant must certify to the court that he or she complies with Washington Supreme Court's Standards for Indigent Defense (SID). Relevant here is SID 14.2, which outlines requirements for court-appointed attorneys according to the severity or type of case. SID 14.2(D)(ii) provides that a court-appointed attorney representing a defendant in an adult sex offense case must, in addition to other requirements not relevant here, have been "counsel alone of record in an adult or juvenile sex offense case or shall be supervised by or consult with an attorney who has experience representing juveniles or adults in sex offense cases."

Mabruk contends that because Shotwell did not meet the requirements of SID 14.2(D), he was "effectively forced to proceed without 'counsel.'" Mabruk relies on City of Seattle v. Ratliff.[6] In Ratliff, a trial court ordered a law student

---

[3] At the close of the State's case, Shotwell also argued a half-time motion to dismiss without Adair, who was in another courtroom for a different case. Shotwell stated, "We can proceed without him."

[4] U.S. CONST. amends. VI, XIV, § 1; WASH. CONST. art. I, § 22.

[5] State v. Jones, 168 Wn.2d 713, 719, 230 P.3d 576 (2010).

[6] 100 Wn.2d 212, 667 P.2d 630 (1983).

working as a Rule 9 intern[7] to represent a defendant without the presence of his supervising attorney.[8] The Ratliff court noted that "counsel" as used in the Sixth Amendment to the United States Constitution and article 1, section 22 of the state constitution "includes only those persons authorized by the courts to practice law."[9] Because a Rule 9 intern is not authorized to practice without a qualified supervisor, the court held that this constituted "an outright denial of counsel," requiring reversal.[10]

We distinguish this case from Ratliff. Shotwell was not a law student. She was fully authorized to practice law and had done so for 6 years. The standards for indigent defense were adopted to provide guidance for what constitutes effective assistance of counsel.[11] They do not function as a requirement for admission to practice.[12] "[T]he professional standards are evidence of what should be done, no more."[13] Thus, the trial court did not deny Mabruk's right to counsel when it required Shotwell to conduct a portion of voir dire without Adair.

---

[7] APR 9(a) authorizes "supervised professional practice by qualified law students, enrolled law clerks, and recent graduates of approved law schools when they are licensed pursuant to this rule."

[8] Ratliff, 100 Wn.2d at 214.

[9] Ratliff, 100 Wn.2d at 217.

[10] Ratliff, 100 Wn.2d at 219.

[11] Mabruk does not argue that Shotwell provided ineffective assistance of counsel.

[12] The preamble to the SID provides that the standards for indigent defense were adopted "to address certain basic elements of public defense practice related to the effective assistance of counsel. . . . The Court adopts additional Standards beyond those required for certification as guidance for public defense attorneys in addressing issues identified in State v. A.N.J., 168 Wn.2d 91 (2010)." (Emphasis added.)

[13] State v. A.N.J., 168 Wn.2d 91, 113, 225 P.3d 956 (2010).

Division Three of this court reached a similar conclusion in State v. Flores.[14] In Flores, the defendant's court-appointed counsel had not been practicing law for at least 2 years when he represented the defendant in a class A felony case, as required by SID 14.2(B). The Flores court held that a court may consider violation of the standards for indigent defense as evidence of ineffective assistance of counsel, but it is "not a categorical denial of counsel."[15] The Flores court noted that such an interpretation "would actually put this court in conflict with Ratliff" because the Ratliff court expressly defined constitutional "counsel" as a person authorized to practice law.[16]

> [W]e conclude that the adoption of the SID did not redefine what constitutes counsel under the Sixth Amendment. As in Gomez and A.N.J., we hold that violation of the SID is evidence of ineffective assistance of counsel. It is not a categorical denial of counsel. To do anything else is to impose a higher standard of representation for indigent defendants than the Sixth Amendment requires for retained counsel.[17]

2.   Admissibility of Herpes Evidence

Mabruk contends that the trial court erred in admitting evidence that W.I. had been exposed to genital herpes. He argues that the evidence was minimally relevant and unduly prejudicial because the State did not present evidence that he had genital herpes.

---

[14] 197 Wn. App. 1, 386 P.3d 298 (2016), review denied, 188 Wn.2d 1003 (2017).
[15] Flores, 197 Wn. App. at 14.
[16] Flores, 197 Wn. App. at 13.
[17] Flores, 197 Wn. App. at 14.

Paula Newman-Skomski, a forensic nurse examiner at Providence Medical Center, performed a sexual assault examination of W.I. Newman-Skomski observed lesions on W.I.'s genital area. W.I. told Newman-Skomski that she had the lesions "off and on for some time." A blood test showed that W.I. had been previously exposed to the virus causing genital herpes. Newman-Skomski concluded that the lesions were likely genital herpes based on W.I.'s self-report in addition to the test results. However, Newman-Skomski testified that she was unable to conclusively determine that the lesions were genital herpes without a culture. She stated she was unable to perform a culture because the lesions were already healing. Newman-Skomski testified that genital herpes was transmitted only through skin to skin contact.

The State did not present any evidence that Mabruk had genital herpes. Detective Todd Jones testified that he did not seek a court order to test Mabruk for genital herpes because "[i]t was determined that the testing for that would not be definitive."

Mabruk moved to exclude any reference to genital herpes. The trial court denied the motion.

Evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable."[18] Relevant evidence is admissible unless a rule of law prohibits

---

[18] ER 401.

its admission.[19] ER 403 prohibits the trial court from admitting relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice." "'"[U]nfair prejudice" is that which is more likely to arouse an emotional response than a rational decision by the jury'" and "suggest[s] a decision on an improper basis."[20] "[N]early all evidence will prejudice one side or the other," and "[e]vidence is not rendered inadmissible under ER 403 just because it may be prejudicial."[21]

A trial court sits in the best position to determine the prejudicial effect of evidence.[22] This court reviews a trial court's decision to admit or exclude evidence for abuse of discretion.[23] A trial court abuses its discretion when it makes a manifestly unreasonable decision or bases its decision on untenable grounds or reasons.[24]

To convict Mabruk of first degree and second degree child molestation, the State had to prove that Mabruk had "sexual contact" with W.I.[25] RCW 9A.44.010(2) defines "sexual contact" as "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party."

---

[19] ER 402.
[20] State v. Cronin, 142 Wn.2d 568, 584, 14 P.3d 752 (2000) (first alteration in original) (quoting State v. Gould, 58 Wn. App. 175, 183, 791 P.2d 569 (1990)).
[21] Carson v. Fine, 123 Wn.2d 206, 224, 867 P.2d 610 (1994).
[22] State v. Powell, 166 Wn.2d 73, 81, 206 P.3d 321 (2009).
[23] State v. Gunderson, 181 Wn.2d 916, 922, 337 P.3d 1090 (2014).
[24] Gunderson, 181 Wn.2d at 922.
[25] RCW 9A.44.083, .086.

Here, the trial court did not abuse its discretion in denying Mabruk's motion to exclude the challenged testimony under ER 403. The evidence that W.I. had been exposed to genital herpes had probative value. W.I. was between nine and eleven years old during the charging period for first degree child molestation and was twelve years old during the charging period for second degree child molestation. W.I. told Newman-Skomski that she had never had voluntary sexual contact with anyone and had no other history of sexual abuse. Evidence that W.I. had been exposed to genital herpes corroborated her testimony that Mabruk had sexual contact with her.

Furthermore, Mabruk does not show that the danger of unfair prejudice outweighed the evidence's probative value. The evidence was subject to extensive cross-examination. Newman-Skomski acknowledged that she could not conclusively determine that W.I.'s lesions were genital herpes. And the State presented no evidence that Mabruk had genital herpes. Although genital herpes is a subject that could likely provoke an emotional response, the trial court reasonably concluded that prejudicial nature of this evidence did not outweigh its probative value.[26] The trial court did not abuse its discretion.

---

[26] See, e.g., State v. Haq, 166 Wn. App. 221, 261-62, 268 P.3d 997 (2012) (in case involving a shooting at a Jewish community center, trial court did not abuse its discretion admitting jail phone calls referencing other acts of terrorism, despite the fact that terrorism could arouse an emotional response, because it was undisputed at trial that there were no links between the defendant and any terrorist groups).

3.    Voir Dire Regarding Herpes Evidence

Mabruk next argues that the trial court erred in preventing him from asking potential jurors about the impact of the genital herpes evidence on their ability to assess W.I.'s credibility.   He contends that this deprived him of a fair trial, necessitating reversal.

During general voir dire, Mabruk asked potential jurors the following question:

> Well, the fact is that you know we will hear some disturbing allegations in this case.  The first question that I have for you all, you can feel free to raise your cards, is whether anybody is really going to believe a 12-year-old girl with genital herpes is going to come in here and get on the stand and say that her father sexually molested her, probably wasn't true?

The State objected, arguing that it was improper for potential jurors to hear about specific evidence the State planned to introduce.   The trial court sustained the objection.[27]   Mabruk continued with voir dire: "Herpes aside, what I am asking you is do you think that a child is going to come in here and be likely to lie about being sexually abused?"   Mabruk proceeded to question the venire extensively about whether they could objectively assess a child victim's credibility.   Mabruk did not ask any further questions about herpes or any type of sexually transmitted disease.

The purpose of voir dire "is to enable the parties to learn the state of mind of the prospective jurors."[28]  However, voir dire should not be used "'to educate the

---

[27] The record does not contain the trial court's ruling.  However, the parties memorialized the ruling on the record later in the day.

[28] State v. Tharp, 42 Wn.2d 494, 499-500, 256 P.2d 482 (1953).

jury panel to the particular facts of the case.'"[29] A trial court has broad discretion in determining the scope and extent of voir dire.[30] We will not disturb a trial court's ruling regarding the scope of voir dire "'[a]bsent an abuse of discretion and a showing that the accused's rights have been substantially prejudiced thereby.'"[31] "The refusal to permit specific questions is not reversible error absent an abuse of discretion, which will be found only if the questioning is not reasonably sufficient to test the jury for bias or partiality."[32]

Here, Mabruk fails to show prejudice. Mabruk questioned potential jurors at length about their ability to be objective in evaluating the testimony of a child victim of sexual abuse. Mabruk argues that "the trial court's solution should not have been the wholesale preclusion of any discussion of sexually transmitted disease." But nothing in the record suggests the trial court would have prevented Mabruk from asking potential jurors hypothetical questions about sexually transmitted disease. The trial court did not abuse its discretion.

4.   Cumulative Error

Mabruk asserts that the cumulative effect of the alleged trial errors mandate a new trial. "The cumulative error doctrine applies 'when there have been several trial errors that standing alone may not be sufficient to justify reversal but when

---

[29] State v. Frederiksen, 40 Wn. App. 749, 752, 700 P.2d 369 (1985) (quoting People v. Williams, 29 Cal. 3d 392, 408, 628 P.2d 869, 174 Cal. Rptr. 317 (1981)).
[30] CrR 6.4(b); Frederiksen, 40 Wn. App. at 752.
[31] State v. Yates, 161 Wn.2d 714, 747, 168 P.3d 359 (2007) (alteration in original) (quoting Frederiksen, 40 Wn. App. at 752-53).
[32] Frederiksen, 40 Wn. App. at 752.

combined may deny a defendant a fair trial."[33] But a new trial is not warranted when the errors have little or no effect on the outcome.[34] Because Mabruk cannot show multiple errors affected the outcome at his trial, his cumulative error claim fails.

5.    Conditions of Community Custody

Mabruk challenges three conditions of community custody. He contends that the trial court exceeded its statutory authority because the conditions are not crime related.

The Sentencing Reform Act of 1981[35] authorizes the trial court to impose crime-related prohibitions and affirmative conditions as part of a sentence.[36] A condition is "crime-related" if it "prohibit[s] conduct that directly relates to the circumstances of the crime for which the offender has been convicted."[37] We review a trial court's imposition of crime-related community custody conditions for abuse of discretion.[38]

Mabruk challenges conditions preventing him from entering "sex-related businesses" and possessing "sexually explicit" or "erotic" materials. Here, there is no evidence that Mabruk's criminal conduct was related to his frequenting of sex-

---

[33] In re Pers. Restraint of Morris, 176 Wn.2d 157, 172, 288 P.3d 1140 (2012) (quoting State v. Greiff, 141 Wn.2d 910, 929, 10 P.3d 390 (2000)).
[34] Morris, 176 Wn.2d at 172.
[35] Ch. 9.94A RCW.
[36] State v. Johnson, 180 Wn. App. 318, 325, 327 P.3d 704 (2014).
[37] RCW 9.94A.030(10).
[38] State v. Irwin, 191 Wn. App. 644, 656, 364 P.3d 830 (2015).

related businesses or his possession of sexually explicit materials. The State relies on State v. Magana[39] to show that the trial court properly imposed these conditions because Mabruk's crimes were sexual in nature. But, in State v. Norris,[40] this court disagreed with Magana to the degree the decision "stands for either a categorical approach or the broad proposition that a sex offense conviction alone justifies imposition of a crime-related prohibition." There must be some evidence supporting a nexus between the crime and the condition. In the absence of any evidence showing that sex-related businesses or sexually explicit materials contributed in some way to the crime, the trial court abused its discretion by imposing these conditions.[41]

Mabruk also challenges a condition requiring him to remain at home between the hours of 10:00 p.m. and 5:00 a.m. Mabruk contends, and the State concedes, that the court did not have statutory authority to impose this condition because it is not crime related. The crime occurred in the home where Mabruk and W.I. resided. Thus, the curfew is not directly related to the crime.

---

[39] 197 Wn. App. 189, 201, 389 P.3d 654 (2016).

[40] 1 Wn. App. 2d 87, 98, 404 P.3d 83 (2017), review granted, No. 95274-4 (Wash. Mar. 7, 2018).

[41] Because we find that these conditions are insufficiently related to the crime, we need not address Mabruk's argument that the restriction on possessing sexually explicit materials is unconstitutionally vague.

We remand to strike the three challenged community conditions. In all other respects, we affirm Mabruk's judgment and sentence.

_Leach, J._

WE CONCUR:

_Dwyer, J._                    _Schindler, J._